FILED
2021 May-06  AM 11:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| **TAMMY KINCAID** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE** |
| | ) | **Number: _____** |
| **SYMETRA LIFE** | ) | |
| **INSURANCE COMPANY** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

Comes now the Plaintiff, Tammy Kincaid, and hereby files her Complaint against Symetra Life Insurance Company.

## PARTIES

1.    The Plaintiff, Tammy Kincaid ("Mrs. Kincaid"), is an insured under Group Long Term Disability Plan for employees of Wayne Memorial Hospital identified as Group Insurance Policy 01-017469-00 ("the Plan"), who has been improperly denied disability benefits under the Plan.

2.    Defendant, Symetra Life Insurance Company ("Symetra"), is the Administrator of the Plan. Upon information and belief, Symetra is a foreign corporation incorporated in the State of Washington, which conducts business generally in the state of Alabama and specifically within this District.

1

## JURISDICTION AND VENUE

3.      This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.  Plaintiff asserts claims for long term disability ("LTD") benefits, enforcement of ERISA rights and statutory violations of ERISA under 29 U.S.C. § 1132, specifically, Mrs. Kincaid brings this action to recover benefits due to her pursuant to 29 U.S.C. §1132(a)(1)(B) and to enforce her rights under the Plan pursuant to 29 U.S.C. §1132(a)(3).  This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties.  29 U.S.C. §§ 1132(a), (e)(1) and (f) and 28 U.S.C. § 1131. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

## INTRODUCTION

4.      The Plaintiff in this case was subjected to improper claim handling procedures by Symetra as it exploited the shortcomings of ERISA as it relates to claims for "welfare" benefits to avoid paying Mrs. Kincaid's valid claim for disability benefits. The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit Plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983). Mrs. Kincaid, as an employee insured for disability, was supposed to be treated as a beneficiary by Symetra as a statutory fiduciary. Instead, Symetra has breached those duties and victimized Mrs.

Kincaid by engaging in improper claim handling procedures. As described in more detail below, Symetra has clearly engaged in bad faith claim handling and Ms. Mrs. Kincaid, at minimum, is entitled to *de novo* review and all relief that ERISA provides.

## STATEMENT OF FACTS

5.    Mrs. Kincaid is an insured for benefits under the Plan. Symetra is the administrator of the Plan. The Plan provides insureds, like Mrs. Kincaid, LTD benefits and was in full force and effect at all times relevant to this Complaint.

6.    At all relevant times, Mrs. Kincaid was employed by Wayne Memorial Hospital and was a covered participant in the Plan, as defined in 29 U.S.C. § 1002(7) and under the terms and conditions of the Plan.

7.    Mrs. Kincaid, a woman fifty-three (53) years of age, worked at Wayne Memorial Hospital until her disabilities forced her to stop working on or about January 15, 2019.

8.    Mrs. Kincaid was employed by Wayne Memorial Hospital as a Certified Registered Nurse Anesthetist ("CRNA"), whose job duties entailed performing pre-anesthesia assessments, formulating client-specific plans for anesthesia care, implementing and adjusting anesthesia care plans based on physiological responses, and transferring the responsibility for care to other qualified providers in a manner which assures continuity of care and client safety. This

position required frequent and prolonged standing, walking, sitting, bending, and reaching, as well as pushing, pulling, moving and lifting heavy equipment, supplies, or clients.

9.     Mrs. Kincaid's medical disabilities include history of esophageal cancer status post neoadjuvant therapy and esophagectomy with gastric pull, recurrent diaphragmatic hernias with thoracotomies performed in 2017 and 2019, depression, anxiety, and posttraumatic stress disorder. The symptoms of her impairments and the side effects of the medications and treatment prescribed render Mrs. Kincaid unable to perform her regular occupation.

10.     Mrs. Kincaid has been deemed totally disabled and awarded Social Security Disability benefits by the Social Security Administration.

11.     Mrs. Kincaid was approved for and began receiving LTD benefits from Symetra as of July 15, 2019.

12.     Mrs. Kincaid received continuous LTD benefits from July 15, 2019 to November 14, 2019, totaling approximately four months of continuous benefits.

13.     Mrs. Kincaid's LTD benefits were approved and paid from July 15, 2019 until November 14, 2019 because Symetra determined that she was unable to perform the material and substantial duties of her occupation, as defined under the Plan.

14.     By letter dated January 30, 2020, Symetra wrongfully terminated Mrs.

Kincaid's LTD benefits beyond November 14, 2019.

15.     The Plan at issue, as governed by ERISA and relied upon to deny Mrs.

Kincaid's LTD benefits states, in part:

Disabled/Disability means our determination that your sickness

or injury:

- during the elimination period, prevents you from performing

  with reasonable continuity the material and substantial duties

  of your regular occupation and a reasonable employment

  option offered to you by the employer and, as a result, you are

  not working at all, or you are working and the income you are

  able to earn is less than or equal to 20% of your pre-disability

  earnings.

- during the first 24 months of disability benefits, prevents you

  from performing with reasonable continuity the material and

  substantial duties of your regular occupation and a reasonable

  employment option offered to you by the employer and, as a

  result, the income you are able to earn is less than or equal to

  99% of your pre-disability earnings.

- after the first 24 months of disability benefits, prevents you

  from performing with reasonable continuity the material and

substantial duties of any gainful occupation and, as a result,

the income you are able to earn is less than or equal to 85%

of your pre-disability earnings.

16.    Using this test of disability, Symetra found Mrs. Kincaid disabled and approved her LTD benefits for approximately four (4) months as Mrs. Kincaid's diaphragmatic hernias, postoperative restrictions, depression, anxiety, and posttraumatic stress disorder prevented her from performing the material and substantial duties of her regular occupation.

17.    However, on January 30, 2020, Symetra reversed course and terminated Mrs. Kincaid's LTD benefits. The termination of benefits was based at least in part upon the paid reviews of Dr. Pamela A. Runfola ("Dr. Runfola") and Dr. Anasseril E. Daniel ("Dr. Daniel").

18.    At all relevant times, and prior to the termination of Mrs. Kincaid's benefits, she was under the consistent care of her primary care physician, Dr. Van Adams ("Dr. Adams"), thoracic surgeon, Dr. Richard Gillespie ("Dr. Gillespie"), and therapist, Ms. Jennifer Scott Smith, LCSW, LCAS ("Ms. Smith").

19.    Mrs. Kincaid has a history of esophageal cancer status post neoadjuvant therapy and esophagectomy with gastric pull in 2013.

20.    Due to recurrent diaphragmatic hernias, Mrs. Kincaid underwent thoracotomy and hernia repair surgeries in 2017 and 2019.

21.     On November 1, 2019. Ms. Smith provided an Attending Physician's Statement which noted that Mrs. Kincaid experienced impaired concentration, depressed mood, and anxiety.

22.     Dr. Gillespie completed a Functional Status Update form on November 14, 2019 in which he noted Mrs. Kincaid's diagnosis of diaphragmatic hernia to limit her ability to lift and carry over twenty pounds occasionally.

23.     A Functional Status Update form from Dr. Adams on November 18, 2019 noted chronic abdominal pain secondary to surgery complications and also imposed restrictions on lifting and carrying.

24.     In a letter dated April 19, 2020, Mrs. Kincaid appealed the termination of her LTD benefits.

25.     In her appeal of April 19, 2020, Mrs. Kincaid objected to the classification of her position as CRNA at a Light exertional level and clarified that her job as actually performed required much heavier tasks, including lifting up to fifty (50) pounds. Mrs. Kincaid also recounted her history of multiple surgeries for diaphragmatic hernias and noted restrictions from her surgeon to never lift, push, or pull more than ten (10) to fifteen (15) pounds.

26.     Mrs. Kincaid's April 19, 2020 appeal also reported diagnoses of depression and posttraumatic stress disorder secondary to her prior cancer diagnosis and treatment, which had worsened since becoming disabled.

27.     During an appointment on May 27, 2020, Dr. Gillespie noted that "…I think that she has a 10 to 15 pound lifting restriction and that she should consider this a lifelong limitation of her activity."

28.     On June 2, 2020, Ms. Smith provided a statement which noted Mrs. Kincaid's diagnoses of major depression, posttraumatic stress disorder, and opiate use disorder in sustained full remission.

29.     Ms. Smith noted in this June 2, 2020 statement that "[d]ue to [Mrs. Kincaid's] PTSD, depression, physical limitations, weight limitations, weight lifting restrictions and difficulty with concentration, it is my profession opinion that Mrs. Kincaid will never be able to return to her role as a CRNA."

30.     Despite providing proof of her disability both before the termination of benefits and throughout the appeals process, Symetra refused to award Mrs. Kincaid's LTD benefits and issued its final termination by letter dated August 17, 2020.

31.     In its final termination letter dated August 17, 2020, Symetra relied on the opinions of paid medical reviewers Dr. Nicole B. Washington ("Dr. Washington") and Dr. Sushil M. Sethi ("Dr. Sethi").

32.     Dr. Washington, whom has never seen or treated Mrs. Kincaid, rendered an opinion that she was not disabled from a psychiatric perspective despite her treating therapists' prior statements to the contrary.

33.     Although Dr. Washington was not able to speak with Mrs. Kincaid's own mental health provider, and spoke only with her primary care physician, this paid reviewer nevertheless opined that no restrictions or limitations were warranted from a psychiatric perspective.

34.     Although Dr. Sethi spoke with Dr. Gillespie, Dr. Sethi contradicted and disregarded the exertional limitations set by Mrs. Kincaid's treating surgeon; while Dr. Gillespie limited Mrs. Kincaid to lifting only ten (10) pounds for fear of disrupting her prior diaphragmatic hernia procedures, Dr. Sethi noted that "[w]e disagreed on that matter, and my opinion, which I explained to him, is that she can at least lift 30 pounds, and it will not disrupt his diaphragmatic repair."

35.     Later in his report, Dr. Sethi again recounted his call to Mrs. Kincaid's surgeon, but this time noted that "I did contact Dr. Richard Gillespi… He and I agreed, except for the weight limit which he limited to 20 pounds, and I found that she could easily lift up to 50 pounds, on a continual basis."

36.     Dr. Sethi, whom has never seen nor treated Mrs. Kincaid, nevertheless noted that she could "easily" lift and carry between thirty (30) to fifty (50) pounds continuously and thus perform tasks in a Medium to Heavy physical exertional range, in direct contradiction to restrictions assigned by Mrs. Kincaid's treating surgeon and reiterated during the conversation between these physicians.

37.     Dr. Sethi's June 12, 2020 report ultimately concluded "[i]t may be

advisable that she should avoid lifting heavy patients, but she can at least in my opinion, lift 30-50 pounds occasionally, and 20-30 pounds on a continual basis, without any limitations," disregarding Dr. Gillespie's repeated assertions that Mrs. Kincaid was capable of lifting only ten (10) to fifteen (15) pounds.

38.    Symetra paid Dr. Sethi and Dr. Washington Two Thousand Seven Hundred Sixty-One Dollars and Twenty-Five Cents ($2,761.25) for the opinion that Mrs. Kincaid's disabilities did not restrict or limit her ability to work in her previous occupation.

39.    An Occupational Analysis was conducted on June 15, 2020 which, using Dr. Sethi's restrictions and limitation instead of those of Mrs. Kincaid's treating providers, found Mrs. Kincaid to be capable of material and substantial duties of her regular occupation as a CRNA.

40.    Mrs. Kincaid responded to the reviews of Dr. Washington and Dr. Sethi in a letter dated June 26, 2020.

41.    After receiving Mrs. Kincaid's letter of June 26, 2020, Symetra referred her claim for further review by Dr. Washington and Dr. Sethi.

42.    Dr. Sethi noted in a July 10, 2020 report that his opinion remained unchanged.

43.    After reviewing Ms. Smith's June 2, 2020 statement, Dr. Washington found notations of Mrs. Kincaid's posttraumatic stress disorder and depression with

flashbacks and impaired concentration to be "… concerning based upon the potentially dangerous consequences of her making a mistake at work due to the nature of her job. Based upon this information, it is recommended that she remain off work and be re-evaluated in 3 months."

44.    Dr. Sethi and Dr. Washington were paid Two Hundred Thirty-Five Dollars for their updated opinions.

45.    After Dr. Washington opined that Mrs. Kincaid would not be able to perform her regular occupation as a CRNA due to the risk posed by her psychiatric conditions, Symetra requested that Dr. Washington reassess this finding with the knowledge that Mrs. Kincaid accepted a position as a Scribe/Staff Nurse on November 25, 2020.

46.    Mrs. Kincaid's position as a Scribe/Staff Nurse required that she perform tasks such as answering and returning patient phone calls, scheduling patient appointments, scribing notes for the office, ordering tests, and performing patient history. In this position, Mrs. Kincaid was required to lift, push, or pull no more than ten (10) pounds.

47.    Mrs. Kincaid's position as Scribe/Staff Nurse was much less strenuous, both physically and mentally, than her prior occupation as a CRNA, which required frequent and prolonged standing, walking, bending, and reaching; lifting and moving heavy equipment or patients; and providing client-specific anesthesia care. Mrs.

Kincaid's regular occupation as a CRNA required that she account for client safety while implementing and adjusting anesthesia care plans in response a patient's physiological responses, and thus posed a greater safety risk due to Mrs. Kincaid's medical impairments than the largely clerical tasks required by a Scribe/Staff Nurse position.

48.    In her regular occupation as a CRNA, Mrs. Kincaid was paid approximately Sixteen Thousand Six Hundred Fifty-Five Dollars and Sixty Cents ($16,655.60) per month.

49.    Mrs. Kincaid was paid Thirty Dollars ($30.00) per thirty-six (36) hour workweek, or approximately Four Thousand Three Hundred Twenty Dollars ($4,320.00) per month, in her role of Scribe/Staff Nurse, an amount well below the Plan's requirement that "… the income you are able to earn is less than or equal to 99% of your pre-disability earnings" during the first twenty-four (24) months of disability benefits.

50.    Nevertheless, in a report dated July 27, 2020, Dr. Washington revised her prior opinion and stated that "… the claimant does have the ability to engage in regular work duties if allowed to do so in the outpatient setting from 11/19/19 to present."

51.    Ms. Smith's June 2, 2020 statement explained that "Mrs. Kincaid continues to struggle with PTSD symptoms which are greatly exacerbated by her

role as a CRNA" and that "[t]he duties this job requires increases Mrs. James' flashbacks, inability to concentrate on necessary and potentially life-threatening administration of medication and puts her at risk for relapse given her ability and necessity of access to controlled medication."

52.     Dr. Washington, however, asserted that "… her main barrier for return to work was her ability to function in the hospital setting…" and that "… the claimant does have the ability to engage in regular work duties if allowed to do so in the outpatient setting from 11/19/19 to present," ignoring Ms. Smith's report that Mrs. Kincaid's job duties, and not the job setting, were the source of her severe symptoms.

53.     Dr. Washington was paid One Hundred and Two Dollars and Fifty Cents ($102.50) for the opinion that Mrs. Kincaid was capable of returning to her regular occupation as a CRNA in an outpatient setting.

54.     Symetra did not allow Mrs. Kincaid an opportunity to review and respond to Dr. Washington's and Dr. Sethi's newest reports, as Mrs. Kincaid was only informed of the content of these paid reports and Symetra's reliance upon their opinion in the letter terminating benefits dated August 17, 2020. Rather than providing Mrs. Kincaid further opportunity to respond, Symetra informed Mrs. Kincaid that she could "bring a civil action."

55.     As of this date, Mrs. Kincaid has been denied benefits rightfully owed

to her under the Plan.

56.     Mrs. Kincaid has met and continues to meet the Plan's definition of disabled.

57.     Mrs. Kincaid has exhausted any applicable administrative review procedures and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

58.     Symetra's refusal to pay benefits has caused tremendous financial hardship on Mrs. Kincaid.

## STANDARD OF REVIEW

59.     A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan.

60.     When discretionary authority is clearly granted and the insurer of an ERISA plan also acts as a claims administrator, there is a structural or inherent conflict of interest that mandates a heightened arbitrary and capricious standard of review.

61.     Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to Symetra or to any other entity who may have adjudicated Mrs. Kincaid's claim. Therefore, the Court should review Mrs. Kincaid's claim for benefits under a *de novo* standard.

62.     Upon information and belief, Symetra evaluated and paid all claims under the LTD Plan at issue, creating an inherent conflict of interest.

63.     Symetra has failed to comply with the letter of the claims procedures outlined in ERISA and therefore Mrs. Kincaid's claim for benefits should be reviewed by this Court under a *de novo* standard.

64.     In the alternative, if the Court finds that Symetra is entitled to the heightened arbitrary and capricious standard of review, the termination of Plaintiff's benefits constitutes a clear abuse of discretion as Symetra's decision to deny Mrs. Kincaid's LTD benefits was arbitrary and capricious.

## **DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT**

65.     Symetra has wrongfully denied LTD benefits to Mrs. Kincaid, in violation of the policy provisions and ERISA, for the following reasons:

   (a) Mrs. Kincaid is totally disabled, in that she is prevented from performing the material and substantial duties of her regular occupation;

   (b) Mrs. Kincaid is entitled to disability under the terms of the Plan, as she meets the Plan's definition of disability and she has otherwise met the conditions precedent of the Plan for coverage and entitlement to benefits;

(c) Symetra failed to accord proper weight to the evidence in the administrative record showing that Mrs. Kincaid is totally disabled;

(d) Symetra's interpretation of the definition of disability contained in the Plan is contrary to plain language of the Plan, unreasonable, arbitrary, capricious, and otherwise violated the standards required by ERISA;

(e) Symetra failed to allow Mrs. Kincaid a right to access information upon which it relied to make a final determination, and failed to allow Mrs. Kincaid an opportunity to respond to said information, before it made a final determination on her claim for LTD benefits;

(f) Symetra wrongfully denied Mrs. Kincaid a full, fair and impartial review of her benefits claim pursuant to 29 C.F.R § 2560.503-1(h)(1), by ignoring the overwhelming weight and credibility of evidence submitted and instead behaved as an adversary, looking instead for less credible evidence of marginal significance to support its goal of denying her benefits claim;

(g) Symetra failed to give proper weight to Mrs. Kincaid's own accounts regarding the debilitating effects of her symptoms;

(h) Symetra ignored the records and opinions of Mrs. Kincaid's treating physicians which show that Mrs. Kincaid is totally disabled, and

instead based its decision to deny benefits on its internal review by Symetra staff members and its paid reviewers, who had never seen or treated Mrs. Kincaid, some of which never spoke with her treating physicians about the nature of her disability, and who were not as qualified as Mrs. Kincaid's treating physicians to formulate opinions regarding the nature and extent of her disability;

(i) Symetra failed to exercise reasonable flexibility in its claims review process to assure Mrs. Kincaid a full, fair review, well-reasoned, and principled of her claim;

(j) Symetra administered Mrs. Kincaid's claim for LTD benefits while acting under an inherent and substantial conflict of interest in that Symetra served as both fiduciary of and funding source for the Plan, and placed its own pecuniary interests above Mrs. Kincaid's interests in wrongfully terminating her LTD benefits and failing to administer the Plan as an impartial decision-maker, free of such conflict of interest, would;

(k) Symetra made erroneous interpretations of some evidence in violation of its obligation to discharge its duties with care, prudence, skill, and diligence;

(l) Symetra acted in bad faith by denying Mrs. Kincaid's claim based

upon the inability of Symetra's paid reviewers to find Mrs. Kincaid disabled, and otherwise failed to administer the Plan honestly, fairly and in good faith, and to at all times act in Mrs. Kincaid's best interests;

(m)     Symetra terminated Mrs. Kincaid's benefits without the support of any new information that altered in some significant way the previous decision over four (4) months to pay LTD benefits to Mrs. Kincaid;

(n) Symetra terminated Mrs. Kincaid's benefits without the support of any new information that showed improvement in Mrs. Kincaid's medical condition, when in fact, her treating physicians opined that her condition continued to deteriorate;

(o) Symetra failed to support the termination of benefits with substantial evidence;

(p) Symetra imposed a standard not required by the Plan's provisions, by requiring objective evidence of Mrs. Kincaid's subjective medical conditions where such evidence cannot be reasonably provided;

(q) Symetra denied Mrs. Kincaid's claim for a lack of objective medical evidence when Mrs. Kincaid has provided ample subjective

evidence of a disability and Symetra has neither identified any objective evidence that Mrs. Kincaid could have supplied to support the claim and has not had Mrs. Kincaid undergo an independent medical examination or a similar in-person probative procedure to test the validity of her complaints;

(r) Symetra failed to consider Mrs. Kincaid's non-exertional limitations caused by her disability, such as the side effects of her prescribed medication, her ability to regularly attend work, and the effect her disability has on her concentration, persistence and pace when performing the material duties of her occupation;

(s) Symetra's termination of Mrs. Kincaid's LTD benefits failed to provide a detailed explanation and the basis of its disagreements with the opinions of Mrs. Kincaid's treating physicians;

(t) Symetra's termination of Mrs. Kincaid's LTD benefits failed to provide a detailed explanation and the basis of its disagreement with the disability determination by the Social Security Administration;

(u) Symetra failed to consider the Social Security Administration's finding of disability in its evaluation, despite its obligation to consider such evidence, and instead diminished Mrs. Kincaid's approval for SSDI benefits while ignoring the evidence generated

by the Social Security Administration in investigation of this claim;

(v) Symetra used Mrs. Kincaid's most recent work activity as evidence of functional capacity despite the Plan's specifications that a claimant remains disabled if unable to earn less than or equal to 99% of the claimant's pre-disability earnings during the first twenty-four (24) months of disability benefits;

(w)    Symetra wrongfully denied Mrs. Kincaid's LTD benefits in such other ways to be shown through discovery and/or hearing.

66.    As a result of the foregoing, the relief to which Mrs. Kincaid is entitled includes: (1) monthly LTD income benefits to Mrs. Kincaid, (2) payment of back benefits from November 15, 2019 to the date of judgment, (3) pre-judgment interest, (4) equitable relief, including declaratory and injunctive relief, to redress Symetra's practices that are violative of the Plan and ERISA, and to enforce the terms of the Plan and ERISA, and (6) an award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

## CAUSES OF ACTION

## COUNT ONE
## ERISA (Claim for Benefits Owed under Plan)

67.    Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

68.    At all times relevant to this action, Mrs. Kincaid was a participant of

the Plan underwritten by Symetra and issued to Wayne Memorial Hospital and was eligible to receive disability benefits under the Plan.

69.     As more fully described above, the termination and refusal to pay Mrs. Kincaid's benefits under the Plan for the period from at least on or about November 15, 2019 through the present constitutes a breach of Defendant's obligations under the Plan and ERISA. The decision to deny benefits to Mrs. Kincaid constitutes an abuse of discretion as the decision was not reasonable and was not based on substantial evidence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court for the following:

1.     A judgment ordering the applicable standard of review in this case is *de novo*;

2.     A judgment ordering that by a preponderance of the evidence, the Defendant has breached its fiduciary duty to the Plaintiff by wrongfully denying her LTD benefits owed to her through the Plan;

3.     In the alternative, if the Court determines that the applicable standard of review is the heightened arbitrary and capricious standard, the Court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate arbitrary and capricious review and enter a judgment that Defendant's decision to wrongfully deny Plaintiff's LTD benefits was unreasonable,

arbitrary and capricious, and unsupported by substantial evidence;

4.     Declaratory and injunctive relief, finding that Defendant violated the terms of the Plan and Plaintiff's rights thereunder by terminating Mrs. Kincaid's LTD benefits; that Mrs. Kincaid is entitled to a continuation of future LTD benefits from Defendant pursuant to the Plan;

5.     Declaratory and injunctive relief, finding that Defendant breached its fiduciary duties to Plaintiff; enjoining Defendant from further violations of its fiduciary duties; and directing Defendant to take all actions necessary to administer the Plan in accordance with the terms and provisions thereof and Defendant's fiduciary and other obligations arising under ERISA;

6.     A judgment ordering Defendant to pay Mrs. Kincaid's LTD benefits from November 15, 2019 through the date judgment is entered herein, together with pre-judgment interest on each and every such monthly payment through the date of judgment;

7.     An award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g);

8.     For such other and further relief as the Court deems just, fit and proper.

Respectfully submitted this the 6th day of May, 2021.

*/s/ Peter H. Burke*_____
Peter H. Burke (ASB-1992-K74P)
pburke@burkeharvey.com
BURKE HARVEY, LLC
3535 Grandview Parkway, Suite 100
Birmingham, Alabama 35243
Phone: 205-930-9091
Fax: 205-930-9054
*Attorney for Plaintiff Tammy Kincaid*


**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT:**

Symetra Life Insurance Company
c/o National Registered Agents, Inc.
2 North Jackson Street
Suite 605
Montgomery, AL 36104